NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

CAMDEN VICINAGE

| | | |
|---|---|---|
| Lourdes NUNEZ, | : | |
| Plaintiff, | : | |
| v. | : | Civil No. 17-07239 (RBK/KMW) |
| COMMISSIONER OF SOCIAL SECURITY, | : | **OPINION** |
| Defendant. | : | |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court upon the appeal of Plaintiff Lourdes Nunez for review of the final decision of the Commissioner of Social Security. (Doc. No. 1). The Commissioner denied Plaintiff's application for Social Security Disability benefits, finding that Plaintiff was not disabled as defined by the Social Security Act. As explained below, the decision of the Commissioner is **AFFIRMED**.

I. FACTS

A. Procedural History

On November 16, 2012, Plaintiff protectively filed an application for supplemental security income, alleging disability beginning August 15, 2005. The claim was initially denied on April 22, 2013, and again upon reconsideration on October 10, 2013. Plaintiff then filed a

written request for a hearing on November 1, 2013. On September 10, 2015, the Administrative Law Judge ("ALJ"), presiding from Central Islip, New York, held a video hearing, while Plaintiff appeared in Egg Harbor Township, New Jersey. In a decision dated September 22, 2015, the ALJ found that the Plaintiff was not disabled. R. 23–32.

In his decision, the ALJ noted that Plaintiff had severe impairments but that those impairments did not meet the "paragraph B" criteria of listed impairments. R. 24. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of an extended duration. A marked limitation is more than moderate, but less than extreme. R. 24. The ALJ noted that Plaintiff "has no more than mild limitations in the performance of activities of daily living and in social functioning with moderate difficulties in concentration, persistence or pace." *Id.* The ALJ also used Medical Vocational Rule 202.16 in the step-five calculation. The ALJ noted, among other things, Plaintiff's age and inability to communicate in English.

Plaintiff then asked for review by the Appeals Council. Plaintiff did not provide any new evidence or any additional statement about the facts. The Appeals Council reviewed the file and found that Plaintiff suffered from moderate limitations in three areas: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) concentrating persisting, or pace. The Appeals Council also noted that evidence in the record showed that Plaintiff *could* communicate in English. The Appeals Council then applied the new "paragraph B" criteria for Listings 12.04 and 12.06. Despite these differences from the ALJ analysis, the

Appeals Council adopted the findings and conclusions of the ALJ.  R. 11.   Plaintiff then filed this action.

**B. Plaintiff's History**

Plaintiff Lourdes Nunez is a fifty-two-year-old female who was born in the Dominican Republic and has lived in the United States for over twenty years.  R. 42.  She speaks English with a heavy Spanish accent and currently lives at her daughter's home with a grandchild, daughter, and boyfriend.  R. 3977.

Plaintiff suffers from major depression and anxiety disorders, symptoms of anemia and high blood pressure, and cervical and lumbar degenerative disc disease.  R. 63.  She takes various medications for depression, nervousness, and back pain.  These issues have been exacerbated by abuse, loss of a child, and relationship problems.  R. 26.  As a result, Plaintiff alleges that her impairments render her unable to work.

Plaintiff's history of depression goes back to 2011 and includes two psychiatric hospitalizations for apparent suicide attempts.  On February 26, 2011, she entered the emergency room at AtlantiCare Regional Medical Center (ARMC) and reported taking sixty unknown pills. R. 26.  She denied any suicidal ideation but began sporadic psychotropic medication management and therapy with AtlantiCare Behavioral Health. R. 26. During the mental status exams, she displayed pressured speech, a depressed mood, and short-term memory impairment. R. 26. Her diagnosis of depression and anxiety disorders continued following her son's death in June 2011. R. 26. In February 2012, she sent a letter to ARMC closing her treatment because of her lack of interest in receiving care. R. 26. In September 2014, she was admitted back to ARMC for what appeared to be a second suicide attempt. R. 26. Plaintiff denied any suicidal ideation and claimed the mixture of alcohol and prescription drugs resulted in a stupid mistake. R. 27.

Plaintiff continued psychiatric outpatient treatment at AtlantiCare Reginal Medical Center in 2014 and 2015. R. 27–28. In addition to psychiatric treatment regarding depression and bipolar disorders, Plaintiff continued to experience physical problems with her neck, back, and knees. R. 29. She was treated for five herniated discs and underwent pain management injections in her neck and back. R. 29.

At the administrative hearing, Plaintiff testified about the challenges confronting her daily activities. She stated that she has five herniated discs in her neck and back and receives injections for pain. R. 52. She also stated that she has carpal tunnel syndrome. R. 48. This pain, she testified, leaves her unable to sit for more than thirty minutes without pain. R. 47. She also explained that she cannot work because she "takes too much medication." R. 46. Plaintiff further discussed her crippling mental conditions, depression, anxiety, and panic attacks. R. 49–51. While she sees a psychiatrist regularly and takes medication, she told the ALJ that her depression and anxiety has led to continued suicidal ideation. R. 49. She also stated that she suffers from hallucinations, visions and voices. R. 51.

At the administrative hearing, Plaintiff provided additional details about her daily functioning. For example, she stated that she lives in a building without an operable elevator and walks up the steps to the apartment regularly. R. 44. Similarly, she does not have a car and walks to and from public transportation. R. 44. She also admitted to watching television and reading, often reading books in English to a grandchild. R. 48.

### C. Plaintiff's Relevant Medical History

We now review Plaintiff's medical history before AtlantiCare Behavioral Health and AtlantiCare Regional Medical Center. We first consider the general treatment Plaintiff received

there, before considering specific reports offered by doctors Gomez, Bagner, London, and Wilchfort.

1. *AtlantiCare Behavioral Health and AtlantiCare Regional Medical Center* (*ARMC*)

Plaintiff first received care at AtlantiCare for complaints of shortness of breath in 2010. R. 322. She was treated for symptoms relating to anemia and hypertension. Between October 2010 and November 2012, she received routine primary care stemming from low back pain. R. 545–70.

On February 26, 2011, she entered the emergency room of ARMC for treatment regarding an apparent suicide attempt. Plaintiff then participated in mental health treatment at AtlantiCare Behavioral Health and was diagnosed with Major Depressive Disorder and Generalized Anxiety Disorder. R. 3960. Dr. Arturo Gomez, among others, treated her for weekly therapy and psychiatry visits and prescribed medication. R. 3960. On September 6, 2014, she was admitted to ARMC for what appeared at first to be a second suicide attempt. R. 757. From 2011 to 2015, she sought treatment for depression, anxiety, anemia, high cholesterol, and back pain. The following is an overview of that treatment.

AtlantiCare began psychiatric intake treatment on Plaintiff in March 2011. The intake assessment described Plaintiff's symptoms primarily related to depression. R. 577. The abuse history also included Plaintiff's history of physical, emotional, and sexual abuse. Plaintiff suffered from hallucinations as well. While the intake form described a suicide attempt, the risk assessment described her current ideation as having no suicidal or homicidal plans. AtlantiCare then put Plaintiff in a medical management program. Plaintiff then generally sought and received outpatient psychiatric care and therapy. R. 591–98, 659–62, 1840, 3943.

In June 2011, during the medical management program, Plaintiff lost her son. AtlantiCare records noted that she ran out of medication for two weeks and still felt depressed and irritable. R. 581. Her mental status appeared positive in September 2011. Like the March 2011 assessment, she appeared cooperative and well-groomed. Though depressed, she had normal speech, no memory impairment or perceptual disorder, and no abnormal thought content. Similarly, the Plaintiff denied any suicidal or homicidal ideation. R. 581.

AtlantiCare conducted a medical evaluation in March 2013. Dr. Carol Schober noted that Plaintiff's memory appears to be intact, but recall was impaired by anxiety. R. 600–01. In addition, Dr. Schober noted Plaintiff can participate in some simple housekeeping but cannot travel alone. In the medical source statement, Dr. Schober added, "With regard to daily functioning the claimant is able to understand and follow directions; she is able to perform basic tasks independently but requires a supportive environment – is easily overwhelmed." R. 601. Dr. Schober gave Plaintiff a Global Assessment of Functioning (GAF) score of 55. R. 601.

In May 2013, Plaintiff returned to AtlantiCare Behavioral Health after a four-month gap in treatment for psychotropic medication management and therapy. R. 658, 668. She continued to complain of depression and anxiety. She saw a pain management specialist for pain in her low back. Tests conducted on February 18, 2014 showed a multi-level lumbar bulge, herniations, and bilateral carpel tunnel syndrome. Dr. Morris Antebi treated her for pain and performed various joint injections. He also conducted an examination and noted that she appeared neurologically intact, with a full cervical range of motion. R. 687.

On September 6, 2014, she was admitted back to ARMC for what appeared to be her second suicide attempt. Plaintiff admitted that she mixed alcohol with her medication and denied any suicidal ideation. R. 3537. In October 2014, Therapist Rebecca King noted that

Plaintiff had no useful ability to function, to interact appropriately with the general public, to maintain socially appropriate behavior, or to adhere to basic standards of neatness and cleanliness. R. 722.

   2. *Dr. Arturo Gomez*

Dr. Gomez treated Plaintiff following her AtlantiCare intake and assessment in Mach 2011. He focused his treatment on Plaintiff's depression and anxiety disorders. Thereafter, he performed several examinations and filed notes on Plaintiff's progress. These examinations noted her history of depression and anxiety. R. 591. His July, August, and September 2012 notes on Plaintiff's mental status assessment indicated no memory impairment or perceptual distortions. R. 591, 598, 597. He noted similar observations in January, February, March, May, June, July, August, and November 2013. R. 592–96, 659, 665. These notes also indicated that Plaintiff had normal thought content and no suicidal ideation. *Id.* Dr. Gomez treated the Plaintiff throughout 2014 and early 2015 and made similar findings. R. 669–98, 3943, 3960.

Pertinent to the instant matter, Dr. Gomez submitted a report to the ALJ that included his impression of Plaintiff's symptoms and how they impact her ability to work and maintain employment. In this report, Dr. Gomez claimed he treated her for her recurrent depressed mood, low motivation and energy, panic attacks, insomnia, and suicidal ideation. R. 3960. Dr. Gomez then opined that Plaintiff had marked or extreme limitations with respect to her ability to understand, remember, and carry out instructions. R. 3961. Specifically, he found that she had marked limitations in the following areas: carrying out short, simple instructions; understanding and remembering *detailed* instructions; and carrying out detailed instructions; and basing judgments on simple work-related decisions. R. 3961. He then found that she had extreme limitations in understanding and remembering short, *simple* instructions. R. 3961. (emphasis

added). He also found that Plaintiff had marked or extreme limitations regarding specific work-related activities. R. 3962. In substantiating these findings, Dr. Gomez noted Plaintiff's panic disorder and severe depression. R. 3962.

### 3. Dr. Ronald Bagner

On May 5, 2015, Dr. Ronald Bagner performed an examination of the claimant on behalf of the New Jersey Disability Determination Services. R. 3965. In the physical examination, he noted she ambulates with a slow but normal gait, gets dressed without assistance, and is not uncomfortable in the seated position. He also noted that she has degenerative arthritis. R. 3966. Still, he concluded that she could frequently perform the following activities regarding the use of her hands: reaching over head, reaching in other directions, handing, and fingering. R. 3969. His test showed Plaintiff could sit for five hours and walk three hours in an 8-hour work day. R. 3968. He similarly noted she could lift/carry twenty pounds frequently and up to fifty pounds occasionally. R. 3967.

### 4. Dr. David London

Dr. David London performed an examination of the claimant on behalf of New Jersey Disability Determination Services. The examination confirmed her depressive and anxiety disorders. It also noted her chronic back and neck pain, knee pain, leg and hand pain, and high blood pressure and cholesterol problems. R. 3980. In the medical examination, Dr. London noted that she seemed able to comprehend and follow simple instructions. "Her thinking seemed logical and well organized." *Id.* He noted that while short-term memory was impaired, intermediate term memory seemed adequate, and long-term memory seemed adequate. R. 3979. He then noted that her capacity for understanding and memory, sustained concentration and

persistence, social interaction and adaption is impaired. R. 3980. He gave Plaintiff a GAF score of 48. R. 3980.

    5. *Dr. Samuel Wilchfort*

On April 3, 2013, Dr. Wilchfort performed an examination on behalf of New Jersey Disability Determination Services. R. 602. He noted that her behavior is "somewhat bizarre." For example, she complained of pain in both knees, but the examination showed that she has a full range of motion in both knees. Despite her complaints of chronic back pain, the examination revealed she has normal flexion and straight leg raising. Dr. Wilchfort also found that Plaintiff could walk on both her heels and toes. He acknowledged her bipolar disorder and further recommended a psychological evaluation.

**D. The ALJ's Decision**

The ALJ followed the five-step sequential evaluation process for determining disability claims and found that Plaintiff was not disabled on September 22, 2015. *See* 20 C.F.R. § 404.1520(a)(4). First, the ALJ deferred to Plaintiff's testimony which stated that Plaintiff had not engaged in substantial activity during the requisite period. Second, the ALJ determined that Plaintiff had the severe impairments of major depressive disorder, anxiety disorder, and cervical and lumbar degenerative disc disease, but no severe physical impairments, and that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app'x 1. R. 23. The ALJ then considered the Plaintiff's age, education, work experience, and residual functional capacity (RFC), 20 C.F.R. 416.969-(a), in conjunction with the Medical-Vocational Guidelines. 20 C. F.R. Pt. 404 Subpt. P, app'x 2. There, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a range of light work, but that she was limited in certain ways. R. 31. Specifically, the

ALJ restricted Plaintiff to sitting and standing/walking six hours per work day; lifting and carrying up to ten pounds frequently and twenty pounds occasionally; frequent reaching, handling, and fingering with the bilateral upper extremities; and occasionally pushing and pulling, crouching, crawling, kneeling and squatting. R. 25. The ALJ also restricted Plaintiff to understanding simple instructions and performing simple, low stress tasks. R. 32. The ALJ then relied on testimony from a vocational expert who found that Plaintiff could perform work existing in significant numbers in the national economy, including representational jobs as a marker, routing clerk, and office helper. R. 31–32. The ALJ therefore found that Plaintiff was not disabled under the Act during the relevant period. R. 32.

### E. The Appeals Council

The Appeals Council granted Plaintiff's request to review the ALJ's decision. On June 14, 2017, the Appeals Council notified Plaintiff of this grant and proposed to issue a decision finding that Plaintiff is not eligible for benefits under the SSA. R. 7. The Appeals Council further notified Plaintiff that the Council would consider a statement about the facts and law in the case, or additional evidence, if that evidence met the standard in the Notice. *Id.* Plaintiff did not submit any statement or additional evidence, and the Appeals Council adopted the ALJ's record and facts. *Id.*

While the Appeals Council adopted the ALJ's finding that Plaintiff is not disabled, he corrected the ALJ's finding that Plaintiff is unable to communicate in English. *Id.* In support of this finding, the Appeals Council noted that Plaintiff could communicate with the consultative examiners without difficulty; she acknowledged her ability to speak English during the ALJ hearing; and she admitted to reading children's books in English to a grandchild. R. 9.

The Appeals Council also noted that the criteria for evaluating mental impairments under the mental listings had changed since the ALJs decision. The Appeals Council therefore applied the new "paragraph B" criteria for Listings 12.04 and 12.06. R. 8. Using the same evidence reviewed by the ALJ, the Appeals Council found Plaintiff had a mild limitation adapting and managing herself and a moderate limitation in understanding, remembering or applying information. In addition, the Appeals Council found a moderate limitation interacting with others; and concentrating, persisting, or maintaining pace. R. 8.

## II. STANDARD OF REVIEW

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g., Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take the entire record into account or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v.*

*Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

### III. DISCUSSION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ used the established five-step evaluation process to determine whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not the equivalent to a listed impairment, the claimant must show that he cannot perform his past work,

and the ALJ must assess the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e).

If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant is capable of performing based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(v). If the claimant can make "an adjustment to other work," she is not disabled. *Id.*

Here, the Plaintiff argues that the AC finding as to the Plaintiff's RFC was not supported by substantial evidence. Plaintiff focuses on two main points. First, the Appeals Council and the ALJ relied on conflicting findings on Plaintiff's limitations. The Appeals Council's findings were not incorporated into the RFC; nor were additional questions presented to the vocational expert upon the Appeals Council's updated findings. Second, the ALJ's specific accordance of weight to various medical opinions was not supported by substantial evidence. Instead, Plaintiff argues that Dr. Gomez's testimony deserved greater attention.

## 1. The AC and ALJ adequately considered Plaintiff's mental limitations in formulating the RFC

Plaintiff argues that the Appeals Council and ALJ erred in formulating the RFC by failing to account for moderate limitations in social functioning and in the performance of daily living. Specifically, Plaintiff argues that the Appeals Council made a finding of "additional limitations" by categorizing Plaintiff's limitations in social functioning and in the performance of daily living as "moderate," R. 8, whereas the ALJ characterized these limitations as "mild." R. 23–25. Despite these differing terms, the Appeals Council affirmed the ALJ's conclusion regarding Plaintiff's RFC, specifically noting her ability to perform "light work" under various restrictions.

Contrary to Plaintiff's assertion that the Appeals Council erred in affirming the RFC, the Court finds that substantial evidence supports affirming the ALJ's determination.

Between steps three and four, the ALJ is required to assess **all** of the claimant's impairments—even ones that are not "severe"—in combination, when making the RFC determination. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). SSR 96–8p is clear about what the ALJ must consider:

> In assessing RFC, the adjudicator *must* consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96–8p (emphasis added); *see also Soboleski v. Comm'r of Soc. Sec.*, 2015 WL 6175904, at *2 (D.N.J. Oct. 20, 2015) (explaining that a finding of non-severity "does not obviate the need for a separate analysis of how Plaintiff's impairment affects her RFC"). The ALJ must therefore consider all relevant evidence when determining an individual's RFC. *See*, *e.g.*, *Fargnoli*, 247 F.3d at 41.

Here, Plaintiff overstates the differences between the ALJ and Appeals Council's categorizations of the Plaintiff's mental limitations. First, both carefully and thoroughly considered the administrative record. For example, the ALJ restricted the Plaintiff to understanding simple instructions and performing simple tasks with only occasional decision-

making and occasional change in a routine work setting. R. 25. These restrictions incorporate much of the evidence and testimony by the Plaintiff and the medical experts. They also clearly address the Plaintiff's capability to understand and apply information. Second, the Appeals Council was not required to reverse or remand the case merely because it categorized two areas as "moderate" that the ALJ had found to be "mild." Plaintiff ignores the fact that whether the classification was "mild" or "moderate," both fall below the requisite threshold of a "marked" limitation. R. 24. Third, the ALJ's analysis was clear and thorough in determining that the Plaintiff could engage in light work with certain restrictions.

Substantial evidence further shows that the RFC accounts for Plaintiff's limitations in social interactions. Specifically, the ALJ limited Plaintiff to the equivalent of unskilled jobs. "Unskilled jobs" generally minimize the level of social interactions with others. *See* 20 C.F.R. pt. 404, subpt. P. App. 2 201.10(i), 202.00(g). As such, two of the three jobs that the vocational expert identified are consistent with Plaintiff's moderate limitations in social settings. *See* DOT 209.587-034 (Marker) and DOT 222.687-022 (Routing Clerk). For example, the Dictionary of Occupational Titles (DOT) describes these positions as "Not" having significant interactions with other people. *Id.* As one court in the Northern District of Ohio explained, such positions are "characterized as involving the lowest level of interaction with people assigned in the DOT . . ." *Campbell v. Colvin*, No. 13-58, 2013 WL 3992597, at *11.

Even if this Court were to accept the argument that the ALJ erred in the "mild" determination, Plaintiff has not shown how it bears on the ultimate outcome of the disability determination. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error is harmless if "inconsequential to the ultimate nondisability determination"). Again, the Appeals Council affirmed the ALJ's finding that Plaintiff was not disabled and could engage in

light work with certain limitations. As such, the "argument that the ALJ's decision should be reversed is therefore redundant and a moot issue because the AC, in effect, corrected the ALJ's misstatement and reasoning . . . ." *Beck-Easley v. Colvin*, No. 1:13-CV-02869-JFK, 2015 WL 1401646, at *29 (N.D. Ga. Mar. 26, 2015).

Plaintiff essentially argues the additional limitations considered by the Appeals Council were not incorporated into the RFC and are required to be reconsidered due to the difference in severity of her limitation from what was determined by the ALJ. However, the difference between the level of severity determined by both the ALJ and the AC provides no "practical difference" in the availability of benefits to the plaintiff here. *Perea v. Comm'r of Soc. Sec.*, No. CIV. 08-2686 DRD JA, 2009 WL 2612522, at *6 (D.P.R. Aug. 21, 2009) (affirming the AC decision that relied on different reasons for denying benefits than those within the ALJ's denial). Moreover, if the factual findings by the AC conflicted with those of the ALJ, this Court defers to the findings of the Appeals Council. *McAdams v. Sec'y of Health & Human Servs.*, 726 F. Supp. 579, 586 (D.N.J. 1989) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)); *See also Pepper v. Soc. Sec. Admin.,* No. CV 14-776 KK, 2016 WL 10721252, at *6 (D.N.M. Jan. 28, 2016).

The AC affirmed the ALJ's finding that Plaintiff was not disabled and could engage in light work with certain limitations. The AC carefully noted that the criteria for evaluating mental impairments under the mental listings had changed since the issuance of the ALJ decision, and the AC applied the new "paragraph B" criteria for Listings 12.04 and 12.06. In affirming the ALJ's findings, the AC summarized the Plaintiff's history of inpatient and outpatient treatment, objective examination findings, and her daily activity. The RFC assessment at issue therefore accounted for all of Plaintiff's credibly established mental limitations.

**2. Substantial evidence supports the ALJ's treatment of Dr. Gomez's opinion**

Plaintiff next argues that the ALJ failed to attach sufficient weight to the opinion of Dr. Gomez. An ALJ has a duty to consider all medical evidence placed before her and must provide an adequate reason for dismissing or discarding evidence. *Akers v. Callahan*, 997 F. Supp. 648 (W.D. Pa. 1998) (citing *Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984)). An ALJ must resolve conflicts in the evidence and cannot rely on a "single piece of evidence" that "will not satisfy the substantiality test." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). As a general matter, an ALJ must give more weight to the opinions of examining physicians over non-examining physicians, but "[a]n ALJ can reject a treating physician's opinion, and thus obviously a consultative examiner's opinion as well, where the opinion is (1) not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or (2) inconsistent with other substantial evidence of record." *Ramos v. Colvin*, No. CV 14-3971 (ES), 2016 WL 1270759, at *5 (D.N.J. Mar. 31, 2016) (citing *Kreuzberger v. Astrue*, No. 07-529, 2008 WL 2370293, at *4 (W.D. Pa. June 9, 2008) (citing 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2)). Ultimately, "an administrative decision should be accompanied by a clear and satisfactory explanation of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Here, the ALJ thoroughly discussed all of the medical evidence of record, including Dr. Gomez's findings and recommendations, in his decision. The ALJ assigned "little weight" to Dr. Gomez's opinions after finding his opinion was not consistent with the testimony overall. The decision was carefully reasoned. For example, the ALJ pointed out to Dr. Gomez's inconsistent assessment that Plaintiff only had marked limitations in understanding and remembering detailed instructions, but then assessed that Plaintiff had extreme limitations in understanding and

remembering short, simple instructions.[1]  R. 3961.  In addition, the ALJ explained how Dr.
Gomez's opinion was inconsistent with Plaintiff's broader treatment.  R. 29.  For example, the
record did not support the assessed level of depression, panic attacks, suicidal ideation, and
memory impairment noted by Dr. Gomez.  R. 590 – 98, 659–62, 664–65, 692, 696, 1840.  Both
consultative psychologists, in contrast, assessed more moderate limitations.  As explained, if the
treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give
that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains her
reasons and makes a clear record.  *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir.
2007); *cf. Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal
requirement that a physician have made the particular findings that an ALJ adopts in the course
of determining an RFC.").  The ALJ gave less weight to the treating doctor, and clearly
explained his reasoning.

3. **Substantial evidence supports the Agency's Step Five Decision**

Plaintiff next argues that the Agency determination regarding her ability to perform work
existing in significant numbers in the national economy is mistaken.  Specifically, Plaintiff
argues that the AC's finding regarding her capacity for English is "confusing."  Next, Plaintiff
argues that the AC needed an additional vocational expert to consider the "additional"
limitations.  Despite these final arguments, this Court finds substantial evidence to support the
Council's step-five determination.

---

[1] A limitation defined as "Marked" is one more severe than "Mild" but less severe than
"Extreme."  R. 24.  The ALJ noted that Dr. Gomez's finding that Plaintiff had a marked
limitation for remembering *detailed* instruction was inconsistent with his finding that Plaintiff
had an extreme limitation in remembering *simple* instruction.

The AC's determination that Plaintiff could communicate in English was supported by substantial evidence in the record. The AC noted that Plaintiff answered some of the ALJ's questions in English and admitted to reading to a grand child in English. R. 9. The AC also noted various places in the record where physicians and medical staff noted that Plaintiff spoke or communicated in English. These facts provide substantial support for the AC correcting the ALJ's finding that Plaintiff could not communicate in English.

The AC's determination regarding Plaintiff's ability to communicate in English does not undercut the vocational expert's determination in any way that favors the Plaintiff's position. If anything, the AC's determination hurts Plaintiff's position. For example, the vocational expert found that Plaintiff could engage in work in three types of jobs that fit Plaintiff's limitations. This classification relied on the ALJ's determination that Plaintiff could not communicate in English. Therefore, if the AC amended the vocational testimony, it's reasonable to think that even more jobs would be available to a person who speaks more than one language. Further still, the vocational expert restricted his testimony to unskilled work, which was consistent with Plaintiff's limitations. Such jobs require low language skills and a limited vocabulary. Plaintiff's argument here is therefore unpersuasive.

**CONCLUSION**

For the reasons discussed above, this Court affirms the decision of the Appeals Court.

Dated:  10/31/2018                                                                 s/ Robert B. Kugler

                                                                                                ROBERT B. KUGLER

                                                                                                United States District Judge